CHICAGO BRIDGE & IRON CO. *v.* CITY OF WEST BAY CITY.

1. MUNICIPAL CORPORATIONS—CONTRACTS—BIDS—APPROVAL—RE-
COVERY OF DEPOSIT.

In answer to an advertisement of the water commissioners of
defendant city, plaintiff proposed to furnish water pipe either
38, 40, or 48 inches in diameter, at a specified price for each
size, and deposited $1,200 with its bid. The commissioners
having recommended the acceptance of the proposal, the
common council authorized the making of a contract with
plaintiff for 48-inch pipe. Subsequently the commissioners
assumed to fix the size of the pipe at 40 inches, and accord-
ingly presented to plaintiff, for its signature, a contract for
pipe of the latter size, which plaintiff declined to sign because
the time therein limited was too short. The action of the
commissioners in changing the size of the pipe was never con-
sidered by or submitted to the council. *Held,* that, under the
provision of defendant's charter requiring the approval of the
council to every such contract, no legal contract was tendered
to plaintiff, and hence defendant had no right to retain the
deposit.

2. SAME—CONSTRUCTION OF SPECIFICATIONS.

Accompanying the specifications on which plaintiff bid was a
copy of the proposed contract, containing a provision author-
izing the commissioners to make any alteration in the dimen-
sions or plan of the work at any time, the contract price to be
increased or diminished accordingly. *Held,* that such provis-
ion had reference to modifications subsequent to the execu-
tion of the contract, and not to preceding negotiations.

Error to Bay; Shepard, J. Submitted November 15,
1901. Decided December 3, 1901.

*Assumpsit* by the Chicago Bridge & Iron Company
against the city of West Bay City to recover the amount
of a deposit. From a judgment for defendant on verdict
directed by the court, plaintiff brings error. Reversed.

*Frank S. Pratt*, for appellant.

*S. G. Houghton* (*Lee E. Joslyn*, of counsel), for
appellee.

MONTGOMERY, C. J. This action was brought to recover the amount of a deposit made with the defendant city, accompanying a bid to furnish 5,000 feet, more or less, of street conduit. The defendant claims that this deposit was made as security that the plaintiff would enter into a contract in accordance with the terms of its bid, that it failed and refused to do so, and that the city was compelled to award the contract to another at an increase in cost of more than the amount of the deposit. The plaintiff meets this contention by asserting that the minds of the parties never met, and that the city never tendered to plaintiff a duly-authorized contract.

The facts are as follows: The water commissioners of West Bay City, Mich., in May, 1899, published a notice to contractors, advertising for proposals for materials and labor for the construction of waterworks; proposals to be received "until 12 o'clock noon of Monday, June 26, 1899." Amongst other things, bids were solicited for "approximately 5,000 lineal feet of submerged influent conduit, composed of riveted steel pipe 48 inches in diameter." It was stated in the notice that "the commissioners expressly reserve the right to adopt such material for influent conduit, and length of same, * * * as they may elect after receiving said bids for the same. The right is also reserved to reject any and all bids." The plaintiff submitted a proposal to furnish 48-inch steel conduit at $4.63 per lineal foot, and also, at the request of the city engineer of West Bay City, although the notice did not ask for it, submitted a bid for 38-inch and 40-inch steel conduit at the price of $3.72 per lineal foot. Accompanying its proposal, plaintiff deposited with the commissioners its draft on the Continental National Bank of Chicago, certified by the bank, payable to the order of West Bay City, for $1,200.

These proposals were submitted on June 26, 1899, and on June 27th the board of water commissioners passed a resolution awarding the contract to plaintiff, "as per their bids as submitted, * * * provided the commission

decide to proceed with the waterworks construction." On July 5, 1899, the commissioners passed a resolution "that the acceptance of all bids be postponed and deferred until right of way to the bay is secured." On July 13th the commissioners passed a resolution recommending to the city council the acceptance of the bid of Muir, O'Sullivan & Doran for furnishing and laying steel conduit pipe, and providing "that contract be entered into in such manner that the steel conduit pipe shall be furnished by the Chicago Bridge & Iron Works at the price named in their bid." The bid of Muir, O'Sullivan & Doran was:

"For furnishing and laying steel conduit, complete, 48-inch, $8.75, and 36-inch, $7.80, per lineal foot.

"For furnishing and laying 36-inch cast-iron conduit, complete, the sum of $9.50 per lineal foot.

"For laying 40-inch steel conduit, the sum of $4.08."

On the 17th of July a resolution was adopted by the city council that the proceedings of the board of water commissioners recommending the contract with Muir, O'Sullivan & Doran for furnishing and laying inlet pipe at $8.75 per foot be approved, and "that the mayor, clerk, and comptroller be instructed to enter into contracts, and also to draw the necessary order in favor of the city treasurer to purchase the right of way and site for building, as per said report and recommendation," and also adopting for the route of the inlet pipe the "Henry-street route, so called." It will be remembered that plaintiff's proposal contemplated the furnishing of 38-inch, 40-inch, and 48-inch steel conduit pipe; but no action up to this time had been taken, either by the board of water commissioners or the city council, to decide the size of the conduit pipe. On July 21, 1899, the water commissioners adopted a motion, made by Commissioner Griffin, "that the size of the intake pipe be determined upon at 40 inches." This action of the commissioners was never considered or approved by the city council.

On the 24th day of July plaintiff was served with a certified copy of the resolution of the commissioners of

July 21st by the city attorney, Mr. Lee E. Joslyn, and Commissioner Walsh, and at the same time they tendered to the bridge company, for execution, a contract already signed in behalf of the city, and dated July 24, 1899, providing for the delivery of 3,000 feet of 40-inch pipe at $3.72 per foot, at least 500 feet to be delivered by August 25th, and 500 feet per week thereafter, and that the whole be fully completed on or before the 1st day of October, 1899. The plaintiff refused to execute such a contract, but on July 25th wrote to West Bay City, refusing to enter into the proposed contract, but offering to enter into a contract "on the basis of our proposal to you, dated June 26, 1899, understanding that we have 127 days from the date of the contract in which to complete the same." The plaintiff contends that, in view of the delay in tendering the contract, the time limit fixed was unreasonable; also that the council never accepted the plaintiff's bid in any form, and that there was never a meeting of minds upon the size of the pipe to be used in which the council participated.

Section 7 of chapter 26 of the charter of West Bay City (Act No. 353, Local Acts 1899) provides that the water commissioners, in cases of this kind, after advertising, shall "let the contract to the lowest responsible bidder who shall, in his bid, conform to the requirements of such advertisement, and who shall be deemed competent to do the work, and shall give adequate security for the proper performance thereof, which letting shall be submitted to and approved by the council. Said board shall have the right to reject any and all bids. * * * All contracts entered into by said board shall be submitted to the council for its approval, and, when so approved by the council, shall be entered into and signed by the mayor, comptroller, and city clerk." If it be conceded that the resolution awarding the contract to Muir, O'Sullivan & Doran, adopted by the commissioners on July 13th, and providing that the contract shall be entered into in such manner that the steel conduit pipe shall be furnished by

the Chicago Bridge & Iron Works at the price named in their bid, amounts to an acceptance of plaintiff's bid on the part of the commissioners, it cannot be said that the council ever concurred in this action so as to authorize a contract for 40-inch pipe. The proceedings of the council show that it considered a bid of Muir, O'Sullivan & Doran to furnish pipe at $8.75 per lineal foot, and, on turning to the bid, this is found to be for 48-inch pipe. When the commissioners later adopted the 40-inch conduit, their action was not submitted to the council for approval. The council, therefore, never authorized or assented to such a contract as was tendered to the plaintiff for execution.

It is urged, however, that the specifications upon which the plaintiff bid provided that:

"The commissioners shall have the right to make any alteration in extent, dimensions, form, or plan of the work, either before or after the commencement of construction. If such alteration diminish the quantity of work, the price paid shall be proportionately diminished, and no anticipated profits allowed for work so omitted; and any increase in quantity shall be paid for at contract rate for work of its class."

This was no part of the specifications proper, but was contained in a copy of a proposed contract accompanying the specifications. This provision has reference to modifications after the contract is entered into, and not to the negotiations preceding the contract. To hold that it related to the latter would be to authorize the common council to abdicate its authority, and authorize the commissioners to accept a bid for one size of pipe, obtain the approval of the council, and enter into a contract for another size, at an increased or diminished expense. This the charter plainly prohibits. *Chittenden* v. *City of Lansing*, 120 Mich. 539 (79 N. W. 797).

Our conclusion is that plaintiff's bid was never accepted by the city in the manner prescribed by law, and that plaintiff is entitled to recover the amount of its deposit.

Judgment reversed, and a new trial ordered.

The other Justices concurred.